THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. HOWARD FAIRBROTHERS, PLAINTIFF IN ERROR.

Submitted December 10, 1923—Decided April 11, 1924.

On appeal from the Supreme Court, in which the following *per curiam* was filed:

"The plaintiff in error was convicted of the crime of manslaughter in the Atlantic County Court of Quarter Sessions, for causing the death of Samuel Barton, under the following circumstances: About at eleven o'clock of a dark and stormy night on February 21st, 1921, the deceased, while on a public sidewalk, on his way from Absecon to Oceanville, was struck and fatally injured [death following within a few minutes after the impact] by an automobile, which, according to the testimony on behalf of the state, was being driven at an excessive rate of speed and without any lights, excepting a spotlight on the left side, suddenly left the road and ran upon the sidewalk, knocking Barton down, with the result as above stated, and proceeded along the sidewalk for some distance, without slackening speed, and with the spotlight then turned off the car plunged into the darkness and speeded away without any lights at all. It further appeared that when the car struck Barton there was a loud crash resulting from impact, which caused the breaking of one of the headlights of the car, the broken glass of which was found at the place of collision. There was also testimony which indicated that the automobile was being propelled in such a careless and reckless disregard of human life and of the rights of others in the use of the public highway, in that it was only when the automobile was within about twenty-five feet from a motor car, with all lights lit, and which was standing at the curb, containing occupants, that it was first noticed by the operator of the speeding automobile, who, to avoid striking the car, a threatened catastrophe, ran his automobile upon the sidewalk, with the disastrous result above recounted. There was also testimony that the offending automobile was a Buick, and that the defendant operated it at the time and at the place where Barton was struck. The defendant, at the trial, admitted that he was driving a Buick car at the time and place where Barton was hit, but denied seeing him, and denied that the car struck Barton or any other person, and denied that there was a crash of glass, &c., notwithstanding the fact that on the very next morning the

Buick car showed the left fender bent and the left front lens, which consisted of white glass with a green glass top, broken out, which glass corresponded with the broken glass found at the place where Barton was hit. Of course, all these matters, in view of the defendant's denial, presented issues of fact for the jury to determine, and are not reviewable on writ of error, and are only important as bearing on the question whether or not the trial judge properly refused to direct a verdict for defendant.

"The first point relied on for a reversal in the brief of counsel for plaintiff in error is, that the trial judge erred in permitting John P. Wilson, the county detective, a witness for the state, to testify to statements made to him by the plaintiff in error without finding as a fact that the statements were voluntarily made.

"A reference to the testimony of Mr. Wilson and to the court's action in admitting it makes it quite clear that this contention of counsel is without support. At the time the plaintiff in error was questioned he was not under arrest, and he was informed by the detective that he was seeking information concerning the accident. The witness testified that he at no time, either before or while questioning the plaintiff in error, made any threats against him or any promises to him. It was after the plaintiff in error had answered the questions put to him by the witness that the latter said, 'He would do everything he could to help him along.' The trial judge permitted the witness to be cross-examined as to whether or not the statements made by the plaintiff in error to the witness were voluntary, before receiving the testimony, and it was after such cross-examination was had that the testimony was admitted. The trial judge did not only practically decide that the statements made were voluntary, but took occasion to say: 'This, of course, must be limited to the conversation prior to the time in which he [the witness] said he would do everything he could for him or words to that effect.' We think the action of the trial judge was properly within the legal rule relating to the admission of such testimony.

"Points 2 and 3 of the brief of counsel of plaintiff in error urge a reversal based upon objections made to the reception of the testimony of Charles Kessler and Townsend Showell, both of whom accompanied the county detective and testified to what they heard the plaintiff in error say in answer to questions put to him by the detective.

"The trial judge having decided that the statements made to Detective Wilson were voluntary, it follows, as a logical conclusion, that the objection to the testimony of Kessler and Showell upon the ground that the statements made by the plaintiff in error to Wilson were not voluntary, was no longer debatable.

"The fifth and sixth assignments of errors for reversal are directed to the admission in evidence of a criminal complaint made before a justice of the peace, which charged the plaintiff in error that 'he did run into and feloniously assault one Samuel Barton, by running into him and knocking him down while driving one Buick automobile giving him mortal wounds, of which mortal wounds he languished a short time and then died,' &c., and permitting the justice of the peace to testify that he read the complaint to the plaintiff in error and that he pleaded guilty thereto.

"The ground of objection to the admission of the compaint as made by counsel was as follows: 'We object to the admission of it, if your honor please, as not having any probative force in this proceeding.' The complaint recited the facts as above stated, and charged the plaintiff in error with assault and battery. Of course, if the complaint had no probative force, it is difficult to see what prejudicial error can be predicated upon its admission. We think that it had probative force. By the plea of guilty the plaintiff admitted the truth of the facts stated in the complaint.

"The seventh assignment of error challenging the legal propriety of the trial judge in refusing defendant's counsel's request to direct the jury to acquit the defendant, is, in view of the established facts, palpably without any merit.

"Next, under the eighth assignment of error, it is argued that the court refused to permit Charles Ireland, a witness for the defendant, to answer a question set out at length in the brief of counsel of plaintiff in error.

"Referring to the printed record of the case, we find that the witness answered the question, and that it was after the question was answered that counsel of the state objected, and his objection was sustained by the court. As the question and answer were not struck out, the action of the trial judge was harmless, since the defendant had the benefit of the question and answer. Moreover, we are of the opinion that the question put to the witness was not the subject of expert testimony.

"The ninth assignment of error is founded upon the refusal of the court to permit the defendant to answer on his direct examination the following question: '*Q.* What was your intent when you answered that question of Judge Brown in the manner you did answer him.'

"From the record it appears, according to the defendant's testimony, that when he was arraigned before the justice of the peace on the complaint above referred to, and was asked whether he pleaded guilty or not guilty, he said 'Yes,' and when further asked upon his direct examination what he meant by saying yes he answered: 'Well, in fact, I meant more I understood; I wasn't paying much attention; I don't even know what he read.'

"The defendant, after having denied that he pleaded guilty, was then asked what was his intent when he said 'Yes' to the question whether he was guilty or not guilty, which question the court overruled, and we think properly so. The defendant had already testified what he meant by answering 'Yes,' and gave as a reason for not being more specific that he wasn't paying any attention, and that he didn't know what the justice of the peace read to him. Therefore, by his own admission, he had answered what he meant by saying 'Yes' under all the circumstances. If he paid no attention to what was being said to him, and did not know what was read to him,

it is difficult to see how the defendant was in a position to testify what his intent was when he answered 'Yes.' Besides, what took place before the justice of the peace when the defendant was arraigned, was testified to by him, and the jury was therefore in a position to determine from the testimony of what had occurred in the justice's office, what the defendant's intent was when he answered 'Yes.'

"We have examined the remaining ten assignments of errors urged for reversal and find them to be utterly devoid of merit.

"Judgment is affirmed."

For the defendant in error, *Louis A. Repetto,* prosecutor of the pleas, and *Herbert R. Voorhees.*

For the plaintiff in error, *Ulysses G. Styron.*

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion of the Supreme Court.

*For affirmance*—THE CHANCELLOR, TRENCHARD, MINTURN, BLACK, KALISCH, CAMPBELL, WHITE, GARDNER, VAN BUSKIRK, CLARK, JJ. 10.

*For reversal*—None.